J-S15029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: Z.J.J., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.S., FATHER | No. 2263 EDA 2015 |

Appeal from the Decree entered June 18, 2015,
in the Court of Common Pleas of Philadelphia County, Family
Court, at No(s): CP-51-AP-0000181-2012; CP-51-DP-0000501-2010; FID#
51-FN-322315-2009

BEFORE:  BENDER, P.J.E., OLSON, and PLATT*, JJ.

MEMORANDUM BY OLSON, J.:                **FILED FEBRUARY 29, 2016**

T.S. ("Father") appeals from the decree entered on June 18, 2015, granting the petition[1] filed by the Child Advocacy Unit of the Defender Association of Philadelphia ("CAU" or the "Agency"), seeking to involuntarily terminate Father's parental rights to his dependent child, Z.J.J., a/k/a/ Z.J., a male born in March of 2009 ("Child"), as well as the order entered on June 18, 2015, granting a petition to change Child's permanency goal to adoption.[2]  We vacate and remand.

The trial court set forth the relevant history of this case in its opinion.  ***See*** Trial Court Opinion, 9/3/2015, at 1-2 (unpaginated).  We adopt the trial court's recitation for purposes of this appeal.  ***See id***.  We

---

* Retired Senior Judge specially assigned to the Superior Court.

[1] Pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).

[2] Pursuant to Section 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351.

reproduce the following facts and procedural history, however, relevant to the instant appeal, as follows:

> On October 6, 2014, the CAU filed a petition for involuntary termination of parental rights [of C.A.J., a/k/a C.J., Child's Mother ("Mother") and Father].
>
> On October 24, 2014, [] Father signed a consent and petition to voluntarily relinquish his parental rights to [Child].
>
> On October 24, 2014, a termination of parental rights hearing for [Child] was held in the matter. The trial court found by clear and convincing evidence that [] Mother's parental rights of [Child] should be terminated pursuant to the Pennsylvania Juvenile Act [sic]. [] Father's petition was held in abeyance. Subsequently, [] Father revoked his voluntary relinquishment petition.
>
> On June 18, 2015, a termination of parental rights hearing for [Child] regarding [] Father was held in this matter. The trial court found by clear and convincing evidence that [] Father's parental rights of [Child] should be terminated pursuant to the Pennsylvania Juvenile Act [sic]. Furthermore, the court held that it was in the best interest of [] [C]hild that the goal be changed to adoption.

Trial Court Opinion, 9/3/2015, at 1-2 (unpaginated) (superfluous capitalization omitted).

In separate decrees dated and entered on June 18, 2015, the trial court involuntarily terminated the parental rights of Mother and the unknown father of Child.[3]   On July 16, 2015, the trial court appointed Attorney Neil Krum as appellate counsel for Father. On July 20, 2015, Father timely filed

---

[3] Neither Mother nor the unknown father filed an appeal from the decrees terminating their respective parental rights, nor is either of these individuals a party to the present appeal.

a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In his brief on appeal, Father raises four questions for this Court's review, as follows:

1. Did the court below err in finding that grounds for termination of parental rights had been proven by "clear and convincing evidence"?

2. Did the court below err in finding that the [CAU] had met its burden in proving grounds under 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8)?

3. Did the court below err in finding that the [CAU] had met its burden to prove that termination would be in [] [C]hild's best interests, under § 2511(b)?

4. Did the court below err in denying [d]ue [p]rocess and [e]qual [p]rotection of [l]aw to Appellant T.S., Father, as guaranteed by the Constitutions of the United States and of the Commonwealth of Pennsylvania?

Father's Brief, at 4.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d [567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see*

> *also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id. quoting In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section

2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). The trial court terminated Father's parental rights under Section 2511(a)(1), (2), (5), (8), and (b). *See* Trial Court Opinion, at 9/22/2015, at 1. Section 2511(a)(1), (2), (5), (8), and (b) provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:**

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

This Court has explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but, under Section 2511(b), the focus is on the child.  **In re Adoption of C.L.G.**, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).  We will focus our review on Section 2511(a)(1) and (2).  We note that the trial court relied on its discussion of the facts in relation to Section 2511(a)(1) to support its analysis under Section 2511(a)(2).  **See** Trial Court Opinion, 9/3/2015, at 1-4 (unpaginated).

We have explained this Court's review of a challenge to the sufficiency of the evidence supporting the involuntary termination of a parent's rights pursuant to Section 2511(a)(1) as follows:

> To satisfy the requirements of Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.
>
> * * *
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citations omitted).

> [T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

*In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (citation omitted); *see also In re Adoption of C.L.G.*, 956 A.2d 999, 1006 (Pa. Super 2008) (*en banc*).

Further, regarding the definition of "parental duties," this Court has stated as follows:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the

child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be

remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

Here, in relation to Section 2511(a)(1) and (2), the trial court stated as follows:

> In the instant case, at the October 24, 2014 hearing, all parties stipulated to the facts in the petition for involuntary termination of parental rights. (N.T., 10-14-14, p. 4 and 5). Additionally, at the June 18, 2015 hearing, the stipulation as to the facts in the petition was reiterated. (N.T., 6-18-15, p. 3 and 4). [] Father and his counsel were present at both proceedings. (N.T., 10-14-14, p. 3; 6-18-15, p. 3).
>
> It is clear from the record that for a period of six (6) months leading up to the filing of the [p]etition for [i]nvoluntary [t]ermination, [F]ather failed to perform parental duties for [] [C]hild. The facts in the petition state that "Father has not been consistent with his visits since 2013. Furthermore, [] [F]ather was offered 15 visits and missed 5 during the period from August 2013 through the end of December 2013. Moreover, during the 2014 year, [] [F]ather was offered 35 visits. [F]ather missed 30 of the last 35 scheduled visits offered to him. (CAU Petition, Statement of Facts, p. 7, unpaginated). Lastly, [a Philadelphia Department of Health Services (DHS)] social worker found that [] Father does not [have] appropriate housing. He does not have enough space in his already overcrowded house for [Child] *Id.* at 7.

> * * *

> In the instant matter, [] [C]hild has been in placement care for over forty-two months. The evidence established [] [C]hild is currently in a safe environment with [C]hild's needs being met (N.T., 6-18-15, p. 3).

> * * *

> In the present case, [] Father has not remained in contact with DHS or New Foundations [foster care] and he has not contacted DHS or New Foundations to check on [] [C]hild's welfare. (CAU Petition, Statement of Facts, p. 7, unpaginated).

Trial Court Opinion, 9/3/2015, at 4.

Again, this Court has stated that the focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child pursuant to Section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], [our Supreme] Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

With regard to Section 2511(b), the trial court stated the following:

> In the instant matter, the social worker from New Foundations testified that [] Father and [Child] have no parental bond. (N.T. 10/24/14, p. 6). [] [F]ather was inconsistent with his visitation with [] [C]hild. He missed 30 of 35 visits offered to him during the year of 2014.

- 10 -

Furthermore, the DHS social worker stated that "there is no parental bond between [Child] and his father. [Child] has been taken by DHS to visit with [] [F]ather in Sunbury, PA once a month for 2 years. . . [Child] does not know the names of the children who live in the house ([Father's] girlfriend's children), does not know the name of his half-brother, and does not even know the name of the dog." Moreover, [] Father has not remained in contact with DHS or New Foundations and he has not contacted DHS or New Foundations to check on [] [C]hild's welfare. (CAU Petition, Statement of Facts, p. 7, unpaginated).

The testimony indicated that [Child] would not be adversely affected if [] Father's rights were terminated. (N.T., 10-14-14, p. 6) Furthermore, [Child] shares a primary parental bond with his current caretaker. [Child] looks to his current caretaker for love, safety, security and to have his basic needs met. Lastly, [] Father has not remained in contact with DHS or New Foundations to check on [] [C]hild's welfare. (CAU Petition, Statement of Facts, p. 7, unpaginated).

As explained in the initial [c]ourt [o]rder, the [t]rial [c]ourt found by clear and convincing evidence that [CAU] met their statutory burden pursuant to 23 Pa.C.S.A. § 2511(a) and (b) and that it was in the best interest of [] [C]hild to change the goal to adoption (N.T. 6/18/15, pg. 5).

* * *

For the preceding reasons, the court finds that [CAU] met its statutory burden by clear and convincing evidence regarding the termination of parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (2) and § 2511(b). Furthermore, the court finds that its ruling will not cause [Child] to suffer irreparable harm and it is in the best interest of [] [C]hild as [the] result of testimony regarding [] [C]hild's safety, protection, mental, physical and moral welfare to terminate [] Father's parental rights.

Trial Court Opinion, 9/3/2015, (unpaginated).

In his argument in support of his first issue on appeal, Father asserts the evidence presented was not clear and convincing and was insufficient to terminate his parental rights. Specifically, Father asserts that the trial court erred in relying on: 1) the petition filed by CAU to involuntarily terminate his parental rights; 2) the stipulation of his trial counsel, which he describes as rather perfunctory, to the facts in the petition; and 3) "14 lines [of testimony] in a transcript, comprised of four questions and answers." Father's Brief, at 9, 11. Moreover, Father contends that it is unclear whether the stipulation relates to the facts stated in the original petition to involuntarily relinquish his parental rights or a subsequent petition to voluntarily relinquish his parental rights. *Id.* at 12-13. More specifically, Father claims upon review of the October 24, 2014 hearing transcript, "it appears … that petitions to involuntarily terminate parental rights were under discussion with respect to Mother, as well as to Father, but that a petition to voluntarily relinquish rights was also under consideration for Father." *Id.* at 12.

At the hearing on October 24, 2014, regarding the petitions to involuntarily terminate the parental rights of Mother and Father, the following individuals were present: Attorney Barbara Berry, counsel for CAU; Attorney Thomas Bryan, counsel for DHS; Attorney Edelina Schumann, counsel for Mother; and Attorney James King, counsel for Father. The following witnesses were present and testified: Brenda Howard, a former

DHS social worker; Shanna Jones, a New Foundations caseworker; and Valerie Walker, a DHS social worker.

The following exchange and testimony occurred:

> MS. BERRY: . . . Your Honor, Child Advocate – I brought the petitions today. We'd first like to do a -- I have service on both parties. Counsel stipulated to that. [Father] is present in the courtroom.
>
> I served [M]other—do I need to do that? I served [M]other at . . . . I'd like to put – both – counsel has stipulated to the facts in the petition and we're proceeding today so that, should anything happen with the voluntaries, we don't have to come back again in six months.
>
> I'm asking that you take the evidence and hold it in abeyance until the – until the voluntaries vest, okay? Ms. Schumann, do you agree to stipulate to the facts in the petition as to [M]other?
>
> MS. SCHUMAN: So stipulated.
>
> MS. BERRY: Okay. Your Honor, I'd like to very briefly call Brenda Howard for bond issues.
>
> THE COURT: Okay. Ms. Howard?
>
> * * *
>
> MS. BERRY: Okay. Mr. King, do you stipulate to the facts?
>
> MR. KING: Yes.
>
> MS. BERRY: -- as to father?
>
> MR. KING: Yes.
>
> MS. BERRY: And I'm going to ask the same questions, but I'm going to ask them of Ms. Jones, who supervises the visits. Ms. Jones?
>
> MS. JONES: Yes?

- 13 -

MS. BERRY: Is there a bond between [Child] and his father?

MS. JONES: No.

MS. BERRY: Do you feel that if [Father] were not – if visits were revoked, that [Child] would [be] adversely affected?

MS. JONES: No.

MS. BERRY: Do you believe there's no parental bond between [Father] and [Child]?

MS. JONES: Yes.

MS. BERRY: Thank you. That's all I have.

MR. BRYAN: No questions.

THE COURT: All right. Does anybody have anything else?

MS. SCHUMANN: No.

THE COURT: Okay.

MS. BERRY: Okay. Do I need to go? I ask that you hold the – that you find that I have met my burden – the child advocate has met its burden under 2511A-1, 2, 5 and 8, and that you terminate the rights of both . . . [M]other, and . . . [F]ather.

I'd ask that you do so for [M]other today, and that we hold in abeyance any decision of [F]ather until such time as the voluntaries, which [Father has signed today], vest and are accepted.

THE COURT: Do you have anything regarding [M]other?

MS. SCHUMAN: Only to be vacated within 31 days.

THE COURT: All right. With respect to mom, based upon the stipulation by and between counsel that if the social worker were called to testify, she would testify in accordance with the facts in the petition, as well as the

testimony presented in court today, I do find that the Department of Human Services has met their burden by clear and convincing evidence to involuntarily terminate mom's parental rights, pursuant to 2511A-1, 2, 5, and 8, as well as 2511B.

I'm going to reserve the best interest portion for the next hearing, after we handle [F]ather's portion. We're going to hold [F]ather's petitions in abeyance.

MR. BRYAN: And I'm sorry, Your Honor, just one request. It's that child advocate has met their burden.

THE COURT: Oh, you know what, you are correct.

MR BRYAN: Thank you, Your Honor.

THE COURT: I stand corrected – that the child advocate has met their burden by clear and convincing evidence. Okay.

* * *

MR. BRYAN: Oh, who has safety?

MS. HOWARD: We do.

MS. BRYAN: Miss, when did you last see [] [C]hild in the current foster home?

MS. WALKER: October 16th.

Mr. BRYAN: At that time, was the child […]

MS. WALKER: Yes.

MR. BRYAN: Basic needs being met?

MS. WALKER: Yes.

MR. BRYAN: Thank you.

N.T., 10/24/2014, at 1-9.

- 15 -

At the hearing on June 18, 2015, the following individuals were present:  Attorney Berry on behalf of CAU; Attorney Bryan on behalf of DHS; Attorney King on behalf of Father; and Maureen Eld, the DHS court representative were present, as well as Father, and R.W., Child's foster parent.  Further, Stefanie Edwards, caseworker for New Foundations, Inc., the provider agency for DHS, was present and testified.  The following exchange occurred:

> THE COURT: Okay, Miss Berry.  It's your petition.
>
> MS. BERRY: Your Honor, I'm asking that the [c]ourt move on the voluntaries [sic] relinquishment of rights petitions that [Father] signed back on October 24, 2014.
>
> At that time we put on a stipulated trial.  We have reviewed [sic] the [c]ourt record is clear, that the parties stipulated to the facts in the petition.  [Father] was here, he had agreed to stipulate to the facts in the petition, based on that, Your Honor, I've met my burden, and that the voluntary petitions be dismissed.
>
> THE COURT: Anybody else have anything?
>
> MR. BRYAN: No, your Honor, I'll just get safety testimony.
>
> BY MR. BRYAN:
>
> Q. Miss [Edwards], where's the child currently placed?
>
> A. At New Foundations foster home.
>
> Q. When did you last see the child in that home?
>
> A. On June the 10th, 2015.
>
> Q. At that time was the child safe?
>
> A. The child was safe.

Q. Child's basic needs being met?

A. His basic needs are being met.

MR. BRYAN: Thank you.

M[R]. KING: Your Honor, can I just say that on behalf of [F]ather, he does object and he cites the fact that after he signed the vol's, he felt that he did not fully understand what was explained to him at the time.

MS. BERRY: Your Honor, there was testimony taken from Brenda Howard and Mr. King made a statement on the record that they sat with [Father] at the time, they read them to him, they were there when he signed them, and that at no time did he say he wasn't understanding what was going on. On the other side [sic] though, we're asking that those petitions be set aside, and that we move on the involuntary petitions.

THE COURT: I think at this point we're at the stipulated trial. However, let me see counsel in the back one more time, I apologize. I hate to keep making you walk back and forth.

(Sidebar, off the record.)

THE COURT: All right. So, just so the record is clear, what was the date of the stipulated trial?

MS. BERRY: October 24, 2014.

THE COURT: All right. Based upon the previous stipulation, by and between counsel, and that stipulation on 10/24, 2014, was that it was a stipulation by and between counsel that if the social worker were called to testify, that she would testify in accordance with the facts in the petition, it was held in abeyance, I'm going to make a ruling now, I do find that the Department of Human Services has met their burden by clear and convincing evidence –

MS. BERRY: actually it would be me, I filed.

- 17 -

THE COURT: I'm sorry, that the child advocate it was her petition, I stand corrected, has met their burden by clear and convincing evidence to involuntarily terminate [F]ather's parental rights pursuant to 2511A-1 and 2, as well as 2511B, I do find it's in the best interest of the child to change the goal to adoption, Mr. King's appointment is vacated within 31 days. Mr. King, if [F]ather chooses to appeal, either file his notice of appeal for him, or contact court administration and make sure that they have somebody file his notice of appeal to keep his appellate rights intact.

M[R]. KING: Yes, sir.

THE COURT: Does that sound reasonable?

M[R]. KING: Yes.

THE COURT: Okay. All right.

MR. BRYAN: Thank you, your Honor. I believe we already got to safety.

THE COURT: All right, we just need a date. So, Mr. King and [F]ather, you two are excused.

N.T., 6/18/2015, at 2-5.

Initially, we disagree with the argument raised by both CAU and DHS that Father has waived his first issue. At the hearing on June 18, 2015, Father preserved his objection to the trial court's incorporation of the stipulation that was entered on the record on October 24, 2014. Father's counsel raised an objection, and asserted that Father did not understand the stipulation at the earlier hearing. *See* N.T., 6/18/2015, at 3. Thus, we find that the issue was properly preserved in the trial court for purposes of appellate review. *See* Pa.R.A.P. 302(a) (providing that issues not raised in

the lower court are waived and cannot be raised for the first time on appeal). We also find that Father raised the issue in his brief with sufficient specificity to preserve our review. In **In the Interest of: T.L.B.**, 127 A.3d 813, 817 (Pa. Super. 2015), a panel of this Court declined to find waiver in a juvenile case for failure of the appellant, the Commonwealth, to adequately develop the challenge in its concise statement. The panel held that the concise statement could have been more specific, but the issue was readily apprehended by the trial court. **Id.** at 817 *citing* **Commonwealth v. Laboy**, 936 A.2d 1058, 1060 (Pa. 2007) (holding the appellant had not waived his sufficiency of the evidence claim in a drug case for failure to adequately develop it in his concise statement, where the matter was relatively straightforward, and readily apprehended by the trial court).

Here, the record created at the hearing on July 18, 2015, consisted of only the incorporation of the stipulation at the October 24, 2014 hearing, and a few questions by DHS counsel regarding the safety of Child. As explained in its opinion, in rendering its termination decision, the trial court relied on the facts in the involuntary termination petition to which the DHS social worker would testify if called as a witness, and to which Father had stipulated at the October 24, 2014 hearing. Under the circumstances of this case, however, we find that the trial court erred in relying on the stipulated facts from the October 24, 2014 hearing. The October 24, 2014 hearing was held on a petition for Father's involuntary relinquishment of his parental

rights. At that time, however, Father indicated that he wished to voluntarily relinquish his parental rights.[4] Accordingly, Father stipulated to the facts in the involuntary petition filed against him. The trial court later determined that Father revoked his voluntary relinquishment petition.[5] As a result, Father made the stipulation when he considered voluntarily relinquishing his rights, but then later revoked his consent to voluntarily terminate, and the trial court still held Father to the prior stipulation. The trial court should have convened a new termination hearing and heard new evidence from CAU to support its involuntary petition instead of relying on the stipulation of facts from the prior hearing.

Additionally, in his fourth issue, Father raises a claim that the trial court deprived him of his guaranteed due process rights, both substantive and procedural, under the Fourteenth Amendment to the United States Constitution. Father asserts that the trial court denied him adequate and meaningful notice and hearing. Father's Brief, at 23. "Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." *In re J.N.F.*, 887 A.2d 775, 781 (Pa. Super. 2005). "Due process is flexible and calls for such procedural protections as the situation

---

[4] Upon our review of the certified record and trial court docket, there is a copy of a voluntary relinquishment of parental rights petition with regard to Father, but no indication it was filed.

[5] There is no indication that Father filed a revocation of his consent to a voluntary termination of parental rights petition.

demands." ***In re Adoption of Dale A., II***, 683 A.2d 297, 300 (Pa. Super. 1996) *citing* **Mathews v. Eldridge**, 424 U.S. 319, 334, (1976).

We agree that the trial court's incorporation of the prior stipulation into the record at the October 18, 2015 hearing, and its reliance thereon in rendering its decision to terminate Father's parental rights, over his trial counsel's objection, deprived Father of due process. Father lacked truly meaningful notice and an opportunity to be heard with regard to the involuntary termination of his parental rights.

As we are vacating the trial court's order on the basis of Father's first and fourth issues, we do not reach Father's remaining issues. Accordingly, we are constrained to vacate the trial court's decree and order, and remand the matter to the trial court for further proceedings consistent with this memorandum.

Decree and order vacated; appeal remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/29/2016